**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HERBERT SILVERBERG, <br><br>         Plaintiff, <br><br>     v. <br><br> INOVALON HOLDINGS, INC.; KEITH R. DUNLEAVY; WILLIAM J. TEUBER, JR.; DENISE K. FLETCHER; WILLIAM D. GREEN; ISAAC KOHANE; MARK A. PULIDO, and; LEE D. ROBERTS, <br><br>         Defendants. | Case No. 1:21-cv-8287 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Herbert Silverberg ("Plaintiff"), by and through his undersigned counsel, alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Inovalon Holdings, Inc. ("Inovalon" or the "Company"), with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of the Company's press releases; (c) review of news articles, shareholder communications, and postings on Inovalon's website; and (d) review of other publicly available information.

**NATURE OF THE ACTION**

1.     Plaintiff owns shares of Inovalon Class A common stock ("Inovalon common stock") and brings this action to cure violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78n(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in

connection with the proposed acquisition of Inovalon by an equity consortium (referred to herein as "Parent") led by Nordic Capital and including Insight Partners.

2.      On August 19, 2021, Inovalon's board of directors (the "Board") caused Inovalon to enter into an agreement and plan of merger (the "Merger Agreement") with Parent.  The transaction referred to in the Merger Agreement (*i.e.,* Inovalon will become privately held by Parent) is referred to herein as the "Merger" or the "Proposed Transaction."

3.      Under the terms of the Merger Agreement, each share of Inovalon common stock issued and outstanding immediately prior to the effective time of the merger will be converted into the right to receive $41.00 in cash (the "Merger Consideration").

4.      The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the Company's shareholders.  Inovalon expects the Proposed Transaction to close in late 2021 or early 2022.

5.      On September 17, 2021, in order to convince Inovalon shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a preliminary proxy statement, which was filed with the SEC by Inovalon on Schedule 14A (the "Proxy Statement").

6.      The Proxy Statement, as alleged in greater detail below, fails to disclose material information necessary for Inovalon's shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy Statement materially incomplete and misleading.

7.      It is imperative that the material information that has been omitted from the Proxy Statement be disclosed to Inovalon's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.  For these reasons, and as set forth

in detail herein, Plaintiff asserts claims against Defendants for violations of Section 14(a) of the Exchange Act and Rule 14a-9.

8.      Plaintiff seeks to enjoin Defendants from holding a shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Inovalon's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331 as Plaintiff alleges violations of Section 14(a) of the Exchange Act.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

11.     In connection with the wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

12.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391, because Defendants are found or are inhabitants or transact business in this District.  Additionally, the Proxy Statement was or will be mailed to Plaintiff and other Inovalon's shareholders in this District.

**THE PARTIES**

13.     Plaintiff is, and at all relevant times has been, an Inovalon shareholder.

14.     Defendant Inovalon is a provider of cloud-based platforms empowering data-driven healthcare.  Inovalon is headquartered in Bowie, Maryland, and Inovalon common stock is traded on the Nasdaq under the symbol "INOV".

15.     Defendant Keith R. Dunleavy ("Dunleavy") is, and at all times relevant to this action has been a member of the Board, as well as the Chairman of the Board and Chief Executive Officer ("CEO") of the Company.

16.     Defendant William J. Teuber, Jr., is, and at all times relevant to this action has been, a member of the Board.

17.     Defendant Denise K. Fletcher is, and at all times relevant to this action has been, a member of the Board.

18.     Defendant William D. Green is, and at all times relevant to this action has been, a member of the Board.

19.     Defendant Isaac Kohane is, and at all times relevant to this action has been, a member of the Board.

20.     Defendant Mark A. Pulido is, and at all times relevant to this action has been, a member of the Board.

21.     Defendant Lee D. Roberts is, and at all times relevant to this action has been, a member of the Board.

22.     The Defendants named in ¶¶15-21 are collectively referred to herein as the "Individual Defendants" and, with Inovalon as "Defendants".

## SUBSTANTIVE ALLEGATIONS

23.     Before markets opened on August 19, 2021, Inovalon disclosed that it had entered into the Merger Agreement via a press release.

24.     The following chart, taken from the Proxy Statement, shows some of the potential payouts to Inovalon's officers and directors as a result of the Proposed Transaction:

| Name | Equity ($) |
|---|---|
| Robert A. Wychulis | 3,156,426 |
| Eron Kelly | 2,925,145 |
| Jonathan R. Boldt | 4,850,095 |
| Jason B. Capitel | 6,660,901 |
| Peter De Bock | 1,560,706 |

25.     Additionally, Dunleavy is part of a group providing equity capital for the transaction and their affiliates.  Dunleavy will continue to be a substantial shareholder in the Company, serve on the Board, and lead Inovalon as CEO if the Proposed Transaction closes.

## MATERIAL OMISSIONS IN THE PROXY STATEMENT

26.     Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to Inovalon's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement omits material information that is necessary for Inovalon's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

**Material Omissions Relating to the Background of the Proposed Transaction**

*27.*     The Background of the Merger section of the Proxy Statement (at pp.22-23) explains that in May, June, and July of 2021, the Company entered into at least 13 confidentiality agreements, all but one of which contained standstill provisions.

*28.*     The Proxy Statement does not explain whether any of the confidentiality agreements included don't-ask-don't-waive ("DADW") standstill provisions that preclude any of

the counterparties to the confidentiality agreements from making a topping bid for the Company following the execution of the Merger Agreement.

29.     The failure to plainly disclose or disclaim the existence of DADW provisions creates confusion as to whether those counterparties could have made a superior proposal.  If those non-disclosure agreements contained DADW provisions, then the potential bidders could only make a superior proposal by breaching their agreement since, in order to make the superior proposal, they would have to directly or indirectly ask for a waiver.

30.     Thus, the omission of this material information renders the descriptions of the non-disclosure agreements the Company entered into in the Background of the Merger section of the Proxy Statement misleading and leaves Shareholders unable to discern whether other bidders can make a topping bid for the Company.

31.     In addition, the Proxy Statement says (on page 27) that "On July 30, 2021, Dr. Dunleavy informed the Special Committee that he, Mr. Hoffmann and Cape Capital had retained Morgan, Lewis & Bockius LLP (referred to as "Morgan Lewis") as their legal counsel."

32.     However, considering Dr. Dunleavy's integral involvement in negotiations, the Proxy Statement must be amended to disclose when Dr. Dunleavy and others retained Morgan Lewis to advise them.

**Material Omissions Relating to Financial Projections**

33.     The Proxy Statement discloses certain key non-generally accepted accounting principles ("GAAP") measures of the Company, including Adjusted EBITDA, EBIT, and Unlevered Free Cash Flow, and explains that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled amounts used by other companies."

34.     To avoid misleading shareholders with non-GAAP financial measures in business combinations, publicly traded companies must reconcile non-GAAP financial measures with the most comparable GAAP measurement.

35.     The Proxy Statement must be supplemented to provide Inovalon's shareholders with the necessary line-item projections for the metrics used to calculate disclosed non-GAAP and non-IFRS metrics or to reconcile those projections to the most comparable GAAP measures.

**Material Omissions Relating to Financial Analyses**

36.     The Proxy Statement represents that Inovalon engaged J.P. Morgan Securities LLC ("J.P. Morgan") and a special committee of the Board retained Evercore Group L.L.C. ("Evercore" and with J.P. Morgan the "Financial Advisors") as financial advisors to advise them with respect to the Proposed Transaction.

37.     The Proxy Statement explains that the Financial Advisors presented the Board with financial analyses supporting their opinions as to the fairness of the Proposed Transaction from a financial point of view to the Company's shareholders.   However, the Proxy Statement's descriptions of those analyses omit the following material information preventing shareholders from determining what weight, if any, to place on the analyses when voting with respect to the Proposed Transaction.   Disclosure of this omitted information would significantly alter the total mix of information available to shareholders.

38.     With respect to J.P. Morgan's *Public Trading Multiples* Analysis, the Proxy Statement omits: (i) the parameters used by J.P. Morgan to select the companies analyzed; and, (ii) the individual multiples and financial ratios observed for each of the selected companies used in the analysis.

39.     With respect to J.P. Morgan's *Selected Transaction Multiple Analysis*, the Proxy Statement omits: (i) the parameters used by J.P. Morgan to select the transactions analyzed; (ii)

the specific metrics observed for each selected transaction; and (iii) the inputs and assumptions used to determine the selected FV/NTM Revenue Multiple (as defined on p.43 of the Proxy Statement) range for the Company of 7.0x to 11.0x.

40.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement omits: (i) the unlevered free cash flows that the Company is expected to generate during fiscal years 2021E through 2030E; (ii) the range of terminal values utilized, and the inputs and assumptions used in applying perpetual growth rates ranging from 3.0% to 4.0%; (iii) the specific inputs and assumptions used to determine the discount rates utilized; and (iv) the net debt and other adjustments for the Company subtracted from J.P. Morgan's calculations.

41.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement omits: (i) the unlevered free cash flows that the Company is expected to generate during fiscal years 2021E through 2030E; (ii) the range of terminal values utilized, and the inputs and assumption used in applying perpetual growth rates ranging from 3.0% to 4.0%; (iii) the specific inputs and assumptions used to determine the discount rates utilized; and (iv) the net debt and number of fully diluted shares of Company Stock utilized in Evercore's calculations.

42.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement omits: (i) the parameters used by Evercore to select the companies analyzed; (ii) the individual multiples and financial ratios observed for each of the selected companies used in the analysis, and (iii) the inputs and assumptions used in the "Benchmark" multiplies to determine the Company's implied equity value per share.

*43.*     With respect to Evercore's *Equity Research Analyst Price Targets* Analysis, the Proxy Statement omits: (i) the parameters used by Evercore to select the transactions analyzed; (ii)

the specific metrics observed for each selected transaction; and (iii) the inputs and assumptions used in the "Benchmark" multiplies to determine the Company's implied equity value per share.

44.      With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement omits which transactions were reviewed and the individual premia paid in those transactions.

**Material Omissions Relating to the Financial Advisors' Potential Conflicts of Interest**

45.      The Proxy Statement states, in part, that "[d]uring the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates have had and continue to have commercial or investment banking relationships with certain affiliates of Parent, including Parent's parent company, Nordic Capital X, as well as certain affiliates of each of GIC Pte. Ltd., Insight Venture Partners, L.P. and 22C Capital LLC, for which J.P. Morgan and such affiliates have received, or will receive, customary compensation.  In addition, J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of certain affiliates of GIC Pte. Ltd. and certain affiliates of Insight Venture Partners, L.P., for which it receives customary compensation or other financial benefits. In addition, J.P. Morgan and its affiliates hold, on a proprietary basis, less than 1% of the outstanding common stock of the Company. During the two year period preceding delivery of its opinion ending on August 18, 2021, the aggregate fees recognized by J.P. Morgan from Nordic Capital X were approximately $15.2 million."

46.      However, the Proxy Statement also fails to disclose the amount of "customary compensation" received by J.P. Morgan in connection with that relationship, and fails to disclose the nature, timing, and scope of work for which J.P. Morgan received approximately $15.2 million from Nordic Capital X.

47.      Similarly, Evercore's letter to the Special Committee states, in part, that "[d]uring the two year period prior to the date hereof, Evercore Group L.L.C. and its affiliates have provided financial advisory services to GIC and certain of its affiliates and received fees for the rendering

9

of these services. During the two year period prior to the date hereof, Evercore Group L.L.C. and its affiliates have provided financial advisory services to Insight and certain of its affiliates and received fees for the rendering of these services. We may provide financial advisory or other services to the Company and the Acquiror and their respective affiliates, including Nordic, GIC, Insight and their respective affiliates, in the future, and in connection with any such services we may receive compensation."

48.     However, the Proxy Statement omits the amount of "customary compensation" received by J.P. Morgan in connection with that relationship, and fails to disclose the nature, timing, and scope of work for which J.P. Morgan and Evercore received fees from Parent.

49.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

* * *

50.     The omission of the foregoing information renders the Proxy Statement materially incomplete, in contravention of the Exchange Act.

## COUNT I

### AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. §78n(a)(1).

53.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

54.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders' support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the background of the transaction and financial projections for the Company.

55.     In so doing, Defendants omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56.     Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

57.     Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.

59.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.      Enjoining Defendants and all persons acting in concert with them from proceeding with any shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

B.      In the event the Proposed Transaction closes, directing Defendants to account to

Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 7, 2021                    **ABRAHAM, FRUCHTER &**
                                          **TWERSKY, LLP**

                              By:   _/s/_ Michael J. Klein
                                          Michael J. Klein
                                          450 7th Avenue, 38th Fl.
                                          New York, NY 10123
                                          Telephone: (212) 279-5050
                                          Facsimile: (212) 279-3655
                                          Email: mklein@aflaw.com

                                          *Attorneys for Plaintiff*